UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| EDWARD LONDON,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>CHARLES DANIELS, *et al.*,<br><br>　　　　　　　Defendants. | Case No. 3:20-CV-0284-MMD-CLB<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]<br><br>[ECF No. 32] |

　　　This case involves a civil rights action filed by Plaintiff Edward London ("London") against Defendants Skyler Sheeks ("Sheeks") and Luis Sencion-Gonzalez ("Gonzalez") (collectively referred to as "Defendants"). Currently pending before the Court is Defendants' motion for summary judgment. (ECF Nos. 32, 34.)[2] London opposed the motion, (ECF No. 39), and Defendants replied. (ECF No. 42.) For the reasons stated below, the Court recommends that Defendants' motion for summary judgment, (ECF No. 32), be denied.

**I.　FACTUAL BACKGROUND**

　　　London is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). The events related to this case occurred while London was housed at the Northern Nevada Correctional Center ("NNCC"). On October 9, 2019, London called a man down due to trouble breathing and dizziness. (ECF Nos. 8 at 3; 32-1 at 2.) Defendants Sheeks and Gonzalez, along with other officers, came to London's cell and shackled him at the waist to remove him for medical evaluation. (ECF Nos. 8 at 2-3; 32-1 at 2.)

///

---

[1]　This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]　ECF No. 34 consists of London's medical records filed under seal.

In his verified complaint, London states the following, which is disputed by Defendants: when London was being removed from his cell, he complained that the cuffs on his wrists were too tight, and he refused to allow officers to shackle his feet. (ECF No. 8 at 3.) Officer Sheeks then yanked the restraint and dragged London to the floor. (*Id.* at 4.) Officer Gonzalez gouged London's eye and then stuck his fingers in London's mouth to try and gouge London's mouth. (*Id.* at 5.) London heard Gonzalez say, "you deserve it, she didn't," apparently in reference to London's reason for incarceration. (*Id.*) London believes that Sheeks and Gonzalez intended to use excessive force against him.

According to Defendants, the following occurred, which is disputed by London: On October 9, 2019, after calling a man down due to dizziness and shortness of breath, London submitted to waist restraints and was removed from his cell for evaluation. (ECF No. 32-1 at 2; 32-3 at 3.) When London was removed from his cell, officers attempted to put leg restraints on London, but he became actively noncompliant, physically aggressive, and refused to obey multiple direct orders, including attempting to kick officers. (ECF No. 32-1 at 2.) A spontaneous, hands-on force was required to regain control of London and his leg restraints were applied. (*Id.*) London was resisting correctional officers when medical personnel arrived. (ECF No. 34-1 at 2 (sealed).) Once full restraints were applied to London, he was compliant. (ECF No. 32-3.) London complained that his right wrist restraint was too tight, and it was subsequently loosened. (*Id.* at 11.)

Medical evaluated London and noted he was intoxicated and agitated. (ECF No. 34-1 at 2 (sealed).) Medical also noted a lower gum cut, an abrasion on London's left lower eye, and his right eye was swollen. (*Id.*) London was treated with a salty water solution for his gum laceration and an ice pack for his right eye, as well as overnight observation. (*Id.*) London had visible bruising on his face following the incident. (ECF No. 32-3 at 2.)

On October 13, 2019, London called another man down for eye pain related to the altercation that occurred on October 9, 2019. (*Id.* at 12.) London reported to the Nurse that he continued to have blurry vision following the incident. (*Id.*) The Nurse reported that

London's "right sclera is red but no swelling or drainage present." (*Id.*) London was instructed to kite for an eye doctor to conduct a further evaluation. (*Id.*)

On October 13, 2019, London filed an informal level grievance regarding the alleged staff assault. (ECF No. 32-4 at 4-9.) On December 12, 2019, London filed a first level grievance stating that NNCC was not following their own grievance procedure as it took 61 days to respond to his informal grievance. (*Id.* at 3.) London's first level grievance was not accepted because he changed the grievance's subject from an alleged staff assault to the grievance procedure's response time, which was deemed an abuse of the inmate grievance procedure. (*Id.* at 2.) London was explicitly told "Do **NOT** resubmit." (*Id.* (emphasis in original).)

On October 15, 2019, London received a Notice of Charges for assault related to the incident on October 9, 2019. (ECF No. 32-1 at 2.) London pled not guilty but admitted "kicking with his feet." (*Id.* at 3-4.) Following a disciplinary hearing on December 10, 2019, London was ultimately found guilty of assault. (*Id.* at 6.)

## II.     PROCEDURAL HISTORY

On May 13, 2020, London filed a civil rights complaint under 42 U.S.C. § 1983 alleging Defendants used excessive force against him while he was incarcerated at NNCC. (ECF Nos. 1-1, 8.) On March 9, 2021, the District Court screened the complaint and permitted London to proceed on an excessive use of force claim under the Eighth Amendment against Defendants. (ECF No. 7.) London's claims for verbal harassment and a Prison Rape Elimination Act ("PREA") violation were dismissed with prejudice. (*Id.*) Finally, Defendants Charles Daniels, Perry Russell, and Lisa Walsh were dismissed from the entirety of the case, without prejudice. (*Id.*)

Defendants answered the complaint on September 7, 2021. (ECF No. 17.) Thereafter, the Court entered a Discovery Plan and Scheduling Order setting the discovery cut-off on April 4, 2022. (ECF No. 22.) On March 4, 2022, Sheeks properly served London with 14 interrogatories and 17 requests for admission related to his claims. (ECF No. 26-2, 26-3.) London was required to respond to the interrogatories and requests

for admission by no later than April 4, 2022. Fed. R. Civ. P. 33(b)(2) and 36(a)(3). The attorney for Defendants, Deputy Attorney General Ginn, set an appointment with London to "meet and confer" on April 14, 2022. (ECF No. 26-1.) London stated at the meet and confer that he had not completed the discovery responses. (*Id.*) The result of the meet and confer was an agreement that defense counsel would not file a motion to compel until April 19, 2022 to allow London an opportunity to provide answers to the propounded discovery. (*Id.*) London did not serve responses. (*Id.*)

On April 19, 2022, Defendants filed a motion to compel London to answer the interrogatories and deem the requests for admission admitted. (ECF No. 26.) The Court granted Defendants' motion to compel and ordered London to answer the interrogatories and deemed the requests for admission as admitted. (ECF No. 29.) On June 3, 2022, Defendants filed a motion requesting an order to show cause as to why London should not be sanctioned for failing to answer discovery as ordered by the Court on May 12, 2022. (ECF No. 30.) The Court denied the motion and granted London additional time to respond to Defendants' discovery requests. (ECF No. 31.)

On July 7, 2022, Defendants filed their motion for summary judgment arguing this case should be dismissed because: (1) London failed to exhaust his administrative remedies; (2) London cannot prove an issue of material fact for his claim; (3) London cannot prove officials acted maliciously and sadistically because London admits to actively physically assaulting the Correctional Officers, being intoxicated, planning a synchronized fictitious medical emergency, and failing to obey orders; and (4) NDOC Employees are entitled to qualified immunity. (ECF No. 32.) London opposed the motion, (ECF No. 39), and Defendants replied. (ECF No. 42.)

III. **LEGAL STANDARDS**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim determines which facts are material. *Coles v.*

*Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any

inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a *pro se* litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

## IV.   DISCUSSION

### A.   Official Capacity Claims

Defendants first argue that official capacity claims for monetary damages against Defendants must be dismissed. (ECF No. 32 at 5.) Defendants claim that although all named individuals in the Complaint were screened out, London sued the named individuals in their official capacities and because this Court ordered the claim to proceed against other NDOC Employees, this was done presumably in their official capacities.

When the District Court screened London's complaint, only claims for monetary damages were allowed through. (*See* ECF No. 7.) Therefore, presumably, the claims were screened through as <u>personal capacity claims only</u>. *See Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016) (Where the plaintiff is seeking damages against a state official, a strong presumption is created in favor of a personal-capacity suit because an official-capacity suit for damages would be barred.). To find otherwise would "threaten[] to ensnare parties who may have simply been confused… and may encourage gamesmanship by opposing attorneys." *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009). This is particularly true when a party is proceeding *pro se* and may not understand the legal significance between bringing claims in official versus personal capacities. *See Mitchell*, 818 F.3d at 442. Accordingly, this is not a basis to grant summary judgment.

### B.      Failure to Exhaust Administrative Remedies

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The requirement's underlying premise is to "reduce the quantity and improve the quality of prisoner suits" by affording prison officials the "time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Id.* at 524–25.

The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Proper exhaustion means an inmate must "use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing *Woodford*, 548 U.S. at 90). Thus, exhaustion "demands compliance with an agency's deadlines and other critical procedural rules because no adjudication system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90–91.

In the Ninth Circuit, a motion for summary judgment will typically be the appropriate vehicle to determine whether an inmate has properly exhausted his or her administrative remedies. *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014). "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.* at 1166. The question of exhaustion "should be decided, if feasible, before reaching the merits of a prisoner's claim." *Id.* at 1170.

Failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The defendant bears the burden of proving that an available administrative

remedy was unexhausted by the inmate. *Albino*, 747 F.3d at 1172. If the defendant makes such a showing, the burden shifts to the inmate to "show there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172).

### 1. NDOC's Inmate Grievance System

Administrative Regulation ("AR") 740 governs the grievance process at NDOC institutions. To properly exhaust administrative remedies, an inmate must grieve through all three levels: (1) Informal; (2) First Level; and (3) Second Level. (*See* ECF No. 32-5.) First, the inmate must file an informal grievance within six months "if the issue involves personal property damages or loss, personal injury, medical claims or any other tort claims, including civil rights claims." (*Id.* at 11.) The inmate's failure to submit the informal grievance within this period "shall constitute abandonment of the inmate's grievance at this, and all subsequent levels." (*Id.* at 12.) NDOC staff is required to respond within 45 days. (*Id.*) An inmate who is dissatisfied with the response to the informal grievance may appeal to the next grievance level within five calendar days. (*Id.*)

This next grievance level is called a "First Level Grievance." (*Id.*) A First Level Grievance should be reviewed, investigated, and responded to by the Warden at the institution where the incident occurred; however, the Warden may utilize any staff in the development of a grievance response. (*Id.* at 12-13.) The time limit for a response to the inmate is 45 days. (*Id.* at 14.) Within five days of receiving a dissatisfactory response to the First Level grievance, the inmate must then appeal to the next level, called the "Second Level Grievance." (*Id.*) Officials are to respond to a Second Level Grievance within 60 days, which must include the decision and the reasons for the decision. (*Id.* at 15.) Once the 60-day time frame expires, or after the inmate receives a response to the Second Level Grievance, they are considered to have exhausted available administrative remedies and may pursue civil rights litigation in federal court.

**2.   Analysis**

Defendants assert London failed to properly exhaust his administrative remedies because he did not grieve the allegations in his Complaint and because he failed to complete all three required grievance levels. (ECF No. 32 at 6.) Thus, Defendants argue summary judgment must be entered.

In support of this argument, Defendants submitted the documents related to Grievance Number 2006-30-91033. (ECF No. 32-4.) A review of these documents reveals as follows. On October 13, 2019, London filed an informal level grievance regarding the alleged staff assault that occurred on October 9, 2019. (ECF No. 32-4 at 4-9.) There is no evidence of a response to London's informal grievance included in the record. On December 12, 2019, London filed a first level grievance stating that NNCC was not following their own grievance procedure as it took 61 days to respond to his informal grievance. (*Id.* at 3.) London's first level grievance was not accepted because he changed the grievance's subject from an alleged staff assault to the grievance procedure's response time, which was deemed an abuse of the inmate grievance procedure. (*Id.* at 2.) London was explicitly told "Do **NOT** resubmit." (*Id.* (emphasis in original).)

A grievance is not fully exhausted until a response is received, or <u>the period for a response has expired</u>. *See* AR 740.03(6)-(8) (emphasis added). In this instance, on the surface and based on the above dates, it appears the timing to respond to the informal grievance expired without a response ever being received and thus London properly exhausted his grievance. *See Fordley v. Lizarraga*, 18 F.4th 344, 352 (9th Cir. 2021) ("[W]here inmates take reasonably appropriate steps to exhaust but are precluded from doing so by a prison's erroneous failure to process the grievance, we have deemed the exhaustion requirement satisfied.").

Further, to the extent London had not exhausted his grievance after not receiving a response at the informal level, when London filed his first level grievance and was explicitly told to not resubmit, this arguably made his administrative remedies "unavailable." In *Ross v. Blake*, 578 U.S. 632 (2016), the Supreme Court held that §

1997e(a) requires an inmate to exhaust only those grievance procedures "that are capable of use to obtain some relief for the action complained of." By way of a non-exhaustive list, the Court recognized three circumstances in which an administrative remedy was not capable of use to obtain relief despite being officially available to the inmate: (1) when the administrative procedure "operates as a simple dead end" because officers are "unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use" because "no ordinary prisoner can discern or navigate it"; and (3) when prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 643–44.

Based on the record before the Court, the Court finds Defendants failed to meet their initial burden on summary judgment to establish that London did not exhaust his administrative remedies. Thus, the burden does not shift to London to come forward with evidence to defeat summary judgment. Accordingly, Defendants' motion for summary judgment as to exhaustion must be denied.

### C. Excessive Force

The Eighth Amendment's proscription on cruel and unusual punishment forbids prison officials from inflicting "the unnecessary and wanton infliction of pain . . .." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Encompassed within the Eighth Amendment is a bar on the use of excessive force against prisoners. *See Hudson v. McMillian*, 503 U.S. 1, 7-10 (1992). Courts in the Ninth Circuit apply a five-part balancing test to excessive force claims: (1) the extent of the inmate's injuries; (2) the need for application of force; (3) the relationship between the need and amount of force; (4) the threat reasonably perceived by prison officials; and (5) any efforts that officials utilized to "'temper the severity of a forceful response.'" *Id*. at 7 (quoting *Whitley*, 475 U.S. at 321); *see also Wilkins v. Gaddy*, 559 U.S. 34, 36-38 (2010); *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003).

The inmate must demonstrate that officials acted maliciously and sadistically to prevail. "[W]henever prison officials stand accused of using excessive physical force in

violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. As the Ninth Circuit has explained,

> [t]he "malicious and sadistic" standard arose out of "the need to maintain or restore discipline" inside the prison. When a prison disturbance occurs, prison officials must make "decisions 'in haste, under pressure, and frequently without the luxury of a second chance.'" In these situations, prison officials are "accorded wide-ranging deference" and therefore, prisoners alleging excessive force must show that the force was applied "maliciously and sadistically to cause harm."

*Wood v. Beauclair*, 692 F.3d 1041, 1049-50 (9th Cir. 2012) (quoting *Hudson,* 503 U.S. at 6 and *Whitley,* 475 U.S. at 320). Thus, the Court must be careful when reviewing the factors to verify indicia of "such wantonness with respect to the unjustified infliction of harm as [is] tantamount to a knowing willingness that it occur." *Hudson*, 503 U.S. at 9. Moreover, there is no need for a showing of serious injury as a result of the force, but the lack of such injury is relevant to the inquiry. *See id.* at 7-9; *Martinez*, 323 F.3d at 1184; *Schwenk v. Hartford*, 204 F.3d 1187, 1196 (9th Cir. 2000).

Excessive force cases "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom," and for this reason, the Ninth Circuit has "held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002); *see also Lolli v. Cnty. of Orange*, 351 F.3d 410, 415–16 (9th Cir. 2003); *Liston v. Cnty. of Riverside*, 120 F.3d 965, 976 n. 10 (9th Cir. 1997) (citing cases).

In the motion for summary judgment, Defendants contend there are no allegations or evidence that they exerted force against London maliciously and sadistically for the purpose of inflicting harm. (ECF No. 32 at 6-8.) Based on the evidence before the Court, and in viewing all facts and drawing all inferences in the light most favorable to London, the Court finds that summary judgment must be denied with respect to the excessive force claim for several reasons.

///

       First, Defendants fail to meet their initial burden in moving for summary judgment to demonstrate that a reasonable juror could not find for London. *Celotex*, 477 U.S. at 323. Defendants are thus unable to overcome the initial step in the summary judgment burden-shifting framework. *See In re Oracle Corp.*, 627 F.3d at 387.

       London's verified complaint alone overcomes Defendants' claim that "no evidence exists" to establish excessive force in this case. Pursuant to Ninth Circuit law, "[a] verified complaint may be treated as an affidavit to the extent that the complaint is based on personal knowledge and sets forth facts admissible in evidence . . . ." thus satisfying the *Celotex* affidavit requirement. *McElyea v. Babbitt,* 833 F.2d 196, 197-98 (9th Cir. 1986) (quoting *Lew v. Kona Hospital*, 754 F.2d 1420, 1423 (9th Cir. 1985).

       To the extent Defendants argues the Court should discount the facts stated in the complaint, this argument also fails. The Court may not engage in '[c]redibility determinations' or 'the weighing of evidence'" at the summary judgment stage, "as those are functions reserved for the jury." *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017) (quoting *Anderson*, 477 U.S. at 255).

       Therefore, Defendants have failed to meet their initial burden on summary judgment establishing that there was no evidence in the record that the events occurred based on the complaint. On this basis alone, Defendants' motion should be denied as to the excessive force claim.

       However, even if the Court were to assume Defendants met their initial burden on summary judgment, Defendants' motion must still be denied. Viewing the evidence in the light most favorable to London, the Court cannot say as a matter of law that the force used was not excessive. Based on London's allegations, when London was being removed from his cell for medical observation due to calling a man down, he complained that the cuffs on his wrists were too tight, and he refused to allow officers to shackle his feet. (ECF No. 8 at 3.) Officer Sheeks then yanked the restraint and dragged London to the floor. (*Id.* at 4.) Officer Gonzalez gouged London's eye and then stuck his fingers in London's mouth to try and gouge London's mouth. (*Id.* at 5.) Defendants' own evidence—

namely the medical report, which noted a lower gum cut, abrasion of the left eye, and a swollen right eye—potentially corroborates London's version of events. (*See* ECF No. 34-1 (sealed).) A reasonable jury could determine that the amount of force used to put leg restraints on London—after he was already out of his cell and restrained—was excessive.

It is not the Court's role to weigh conflicting evidence or make credibility determinations, but only to determine whether there is a genuine issue of material fact for trial. *Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997). Further, the Ninth Circuit has found that the reasonableness of force used is ordinarily a question of fact for the jury because such cases almost always turn on a jury's credibility determinations. *See Liston,* 120 F.3d at 976 n. 10.

The Court finds that London has set forth evidence sufficient to raise a genuine issue of material fact for trial as to whether Defendants' use of force was "maliciously and sadistically" applied rather than as part of a "good faith effort to maintain or restore discipline." *Hudson,* 503 U.S. at 7. Accordingly, the Court recommends that Defendants' motion for summary judgment, (ECF No. 32), be denied as to London's Eighth Amendment excessive force claim.

D.   **Qualified Immunity**

The Eleventh Amendment bars damages claims and other actions for retroactive relief against state officials sued in their official capacities. *Brown*, 751 F.3d at 988–89 (citing *Pennhurst*, 465 U.S. at 100). State officials who are sued individually may also be protected from civil liability for money damages by the qualified immunity doctrine. More than a simple defense to liability, the doctrine is "an entitlement not to stand trial or face other burdens of litigation . . ." such as discovery. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

When conducting a qualified immunity analysis, the Court asks "(1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009)). A right is clearly established if it would be

clear to a reasonable official in the defendant's position that his conduct in the given situation was constitutionally infirm. *Anderson v. Creighton,* 483 U.S. 635, 639–40, (1987); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012). The Court may analyze the elements of the test in whatever order is appropriate under the circumstances of the case. *Pearson*, 555 U.S. at 240–42.

A right is clearly established when the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003) (quoting *Anderson*, 483 U.S. at 640). "While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular [action] beyond debate," *City of Escondido v. Emmons*, 139 S. Ct. 500, 504 (alteration in original) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 581 (2018) (internal quotation marks omitted)), and must " 'squarely govern[ ]' the specific facts at issue," *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 15 (2015)). *See Jessop v. City of Fresno*, 936 F.3d 937, 940–41 (9th Cir. 2019) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.") (quoting Anderson, 483 U.S. at 640).

The plaintiff "bears the burden of showing that the rights allegedly violated were clearly established." *Shafer v. County of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017) (internal quotation marks and citation omitted). However, because resolving whether the asserted federal right was clearly established presents a pure question of law, we draw on our "full knowledge" of relevant precedent rather than restricting our review to cases identified by the plaintiff. *See Elder*, 510 U.S. at 516 (holding appellate court must review qualified immunity judgment de novo and resolve whether federal right was clearly established in light of its "full knowledge of its own [and other relevant] precedents") (alteration in original) (citation omitted). Ultimately, "the prior precedent must be 'controlling'—from the Ninth Circuit or Supreme Court—or otherwise be embraced by a 'consensus' of courts outside the relevant jurisdiction." *Sharp v. County of Orange*, 871

F.3d 901, 911 (9th Cir. 2017) (citing *Wilson v. Lane*, 526 U.S. 603, 617 (1999)); *see also Wesby*, 138 S. Ct. at 589–90 ("The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority. It is not enough that the rule is suggested by then-existing precedent.") (internal quotation marks and citations omitted); *Carroll v. Carman*, 574 U.S. 13, 17, (2014) (per curiam) (assuming without deciding that controlling circuit precedent could constitute clearly established federal law).

Defendants contend they are entitled to qualified immunity because "NDOC Employees complied with all appropriate ARs and policies and procedures of the NDOC, and since none of those ARs, policies, or procedures, have been found to be unconstitutional generally, or specifically as it relates to the factual pattern presented in this case, qualified immunity applies." (ECF No. 32 at 9.)

While London's opposition does not identify a particular case that establishes the rights allegedly violated were clearly established, qualified immunity is still not warranted. It was clearly established at the time of the incident in question that a prison official violates the constitution when force is used maliciously or sadistically to cause harm and not in a good-faith effort to maintain or restore discipline. *See Hudson,* 503 U.S. at 6-7. Taking the facts in the light most favorable to London, a fact finder could determine that Defendants violated London's clearly established rights. For these reasons, Defendants are not entitled to qualified immunity.

**V.    CONCLUSION**

For good cause appearing and for the reasons stated above, the Court recommends that Defendants' motion for summary judgment, (ECF No. 32), be denied.

The parties are advised:

1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be

accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## VI. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment, (ECF No. 32), be **DENIED**.

**DATED**: November 14, 2022.

_____
**UNITED STATES MAGISTRATE JUDGE**